Next case up is 25-4000 Scottsdale Capital Advisors v. the SEC. Ms. Fritz, you may proceed. And good morning. Miranda Fritz for Scottsdale Capital. The issue before the court here is the District Court's dismissal of Scottsdale's APA complaint seemingly without regard for critical things like the presumption of reviewability under the APA or the specific elements required for an APA claim and, I would argue, based on a false premise. And that's what I want to address today. In the APA case, in the underlying case, Scottsdale was unquestionably challenging the following. The SEC, as it sort of meandered through the Rule 17A8 development, failed to engage in any rulemaking and was acting outside of its jurisdiction because Congress gave jurisdiction over SAR requirements to the Treasury, which, in turn, gave those to FinCEN, and FinCEN at all times. But the question is, at least one of the questions is, you have to be challenging a agency action, and the only action, the only thing you identified as final agency action in the District Court, you repeatedly said it, was the filing by the SEC of the complaint in Federal District Court in New York. That is correct. Okay, so how is that a final agency action? That, I just first want to distinguish. What we were challenging was not the Alpine case. What we identified as agency action was the Alpine case, and those doggone things got conflated. Well, no, no, no. There was nothing conflated or unclear. You said that the final agency action being challenged was the action of the SEC in filing the complaint in Federal Court in New York. Right. Okay, and how is that a final agency action? Okay, here's why that happened. Again, Rule 1788, 1981 dealt only with CTR requirements. No, no, we're not talking about merits of the decision. We're talking about whether there's final agency action. That doesn't require us to resolve the merits, which you discuss at some length. Not at all, but we have to look for when was their final agency action as to which the SEC asserted that it had jurisdiction over enforcement of SARS. When did that occur? Because that's what we're challenging. No, you're challenging the decision to file, and that is not a final agency action. That's what I'm struggling with here is that is exactly the false premise that I'm trying to get past. I'm sure you're trying to get past it, but I don't think you can. No, we were not challenging the Alpine case. No, no, no, no, but you're challenging the filing of the, you're saying the SEC's action that's final agency action was filing that case, and filing a case in Federal Court is not a final agency action. Even filing a case within the agency itself, the Supreme Court has said, is just not the sort of thing we call final action, agency action, and that is true in spades when it's a filing in Federal Court because then you're asking us to set aside the decision of another court not even in this circuit. Again, all of that flows from the argument that we were filing the Alpine filing. We were not. Here's what we were clearly identifying as agency action. The history of this regulation led up to a series of no rulemaking, ambiguity, all of that until we got to the filing by the SEC of the Alpine case, and here's why we called it final agency action because they did. So let me just talk to you for a minute about what's in the briefing. When they filed the Alpine case, SEC, yeah, when they filed it, having never before asserted jurisdiction over SAR enforcement, here's what they said to the District Court. This case is a matter of first impression that impacts the compliance of both Alpine and all broker-dealers in the financial industry with the requirements of the BSA. The Commission seeks injunctive relief to promote the law enforcement policies of the BSA, FinCEN, and Rule 17a8. A judgment from this District Court will provide the most direct precedent and clear guidance to the largest segment of broker-dealers within the Commission. Well, isn't that an announcement then to Alpine to, you know, challenge the 17a8 proceeding for the reasons that you're arguing? It seems like that's a claim for but not for Scottsdale. The reason why I emphasize this is... Or let me finish, or conversely, Scottsdale should have challenged the rule during the rulemaking process and not collaterally in the declaratory judgment action that they brought here. Again, we are challenging the rulemaking process and the only question is, one of the elements is, we have to identify final agency action. So we had to point to something. This was truly when the gauntlet was thrown by the SEC to the industry. And all the industry was required to do as a result was fight that in court, your inconvenience to that extent, but the Supreme Court has said that's not what we think of as final agency action. Action that just makes you respond and argue the point and then you go and so it's proceed, the case proceeds in the Southern District, I believe it was. Aspen loses and now you want us to set aside essentially the decision of the court in another circuit. No, I really don't. That decision was... You do, but you're not, yeah, you'd like us to come up with the opposite result. What I'm asking is for some court, this court, to take a look at how the SEC utterly and completely failed to comply with the APA. That's what we're asking for. Yeah, but we have to have jurisdiction before. It's a very interesting issue. Love to address it, but we can't address it if we don't have jurisdiction. We don't have jurisdiction until you show that what you claim was final agency action satisfies the requirements of final agency action. Okay, let me just say throughout this case, I have wanted someone to ask the SEC when they think final agency action occurred. There's no dispute here that final agency action occurred and it did occur as they filed the Alpine case and that was their megaphone expressly. The action you're troubled with is the decision in that Alpine case, which is the law that you need to comply with. Your Honor, I respectfully disagree. The action that we filed preceded the outcome of the Alpine case. We didn't care what the outcome was. The reason is when they threw down the gauntlet and said, we want to communicate to the industry, we are asserting jurisdiction and we are moving forward. That was the moment when we had an issue, a position that we had to deal with. I, eerily similar to this sequence of events is the decision in San Francisco Heron, Ninth Circuit case. And if you go through that case, you are going to see the same sequence of events in that case that happened here. What happened in that case is there were little rumblings that jurisdiction was going to be asserted over certain waters. Notices went out, things like that. But there was also a discussion just as there was with respect to the BSA. There was pushback from the industry saying you don't have jurisdiction. So very similar facts. And then what happened in the San Francisco Heron case is they went out into the water and gave in water enforcement orders to actual fishermen saying we are now enforcing this and you are subject to criminal penalties. They used a literal megaphone. This is exactly the same thing. We had the same sequence of events. There were rumblings. And then in the Alpine case, the SEC announced its position. I didn't care what the outcome was. We filed before the outcome because what we were dealing with was their announcement that they had jurisdiction and they were going forward. That was, that satisfies the two problems. It was clearly the consummation of their deliberations on the one hand. And it had legal consequences for the industry. That's what they meant it to do, the filing, not the outcome. That's what they meant to do and that's what they did. What was the consequences to the industry? The industry at that point understood that the SEC under this, and I don't want to go into the under a different and much more onerous regime, was going to be taking jurisdiction over enforcement. If it won, if it won the case, it would be a decision. You wouldn't have to do anything until courts ruled in that case. I really disagree. We knew the outcome didn't matter. Even if Judge Cote had ruled against them, they were going to file these enforcement actions. They were going forward. And if they filed an enforcement action against you, then you'd have a final, then you'd have a final agency action to challenge. And obviously, I believe that this does, under the law, Athlon on the one hand, and the San Francisco case on the other hand, satisfy final agency action. You still have to show an injury though. Yes. And you're saying the injury is from the filing of the enforcement action against Alpine? The injury comes from their megaphone, their trumpeting to the industry that they are going forward with VSA enforcement. That is when it changed, just as it did in the Heron case. How does that injure you, your client? It's very concrete injury. At that point, and it's alleged in the complaint, Scottsdale had to revise significantly its compliance program in order to deal with the SEC's assertion of jurisdiction and imposition of unbelievably onerous penalties that don't exist within the VSA. And so in the complaint, we feel that we have alleged that that announcement, that gauntlet, that got thrown. If Alpine had won that case? Wouldn't have mattered. Wouldn't have mattered. It would not have mattered. The SEC announced its position. It was going to go forward. If it happened to have lost the Alpine case in New York, it would have continued. That was one district court judge. It would not have suddenly said, oops, I guess we were wrong. This was the gauntlet, and boy was it thrown. So, but then, if it had an adverse ruling in the federal court in New York, then it could proceed in the next case. And once it issued an order, there'd be a final agency order. Or given that they decide to proceed in court, they don't issue any orders. You end up with a decision by a federal district court and some other circuit, and then a circuit decision. And then you either win or you lose. The agency has initiated a final agency action. In these circumstances, this announcement, in the wake of the rumblings that had preceded it, was the consummation of the agency's deliberations, and it was expressly so. You are rarely going to find an agency saying, through this filing, we are communicating to the industry, to all broker-dealers in the financial industry, with respect to the requirements of the BSA. And we're doing it to provide clear guidance to the largest segment of broker-dealers within the commission's purview. Your time has expired, so wrap it up. You can wrap up your sentence, but don't think that you still have 24 seconds. The clock is showing how much you've exceeded your time. I would ask that Your Honor really take a look at Athlon and the Heron case in terms of whether that action, the position announced by the SEC via the Alpine filing, constituted, satisfied the two elements of final agency action. Thank you. Would someone please close the back door, please? Good morning, Your Honors. Good morning, Your Honors. May it please the Court. Rachel McKenzie for the SEC. No authority supports Scottsdale's position that it can file an EPA lawsuit over a complaint or the positions the commission took in an enforcement action that it litigated against another party in another federal court. I'm sorry, say that again. That was too fast for me. Apologies, Your Honor. I said no authority supports Scottsdale's position that it can file an EPA lawsuit over the complaint and the positions the commission took in a litigated enforcement action against another party in another federal court. I think the district court's analysis of Scottsdale's failure to identify final agency action is compelling and correct. The SEC's decision to file the Alpine action and the arguments it made to the court in that action did not determine any rights or obligations. The court's decision in that case determined rights and obligations. I'm happy to discuss the Herring case because I think that's actually quite helpful here. Yeah, if you'd respond to that and also to the Athlone case. Absolutely, Your Honor. So in the San Francisco Herring Association, what was at issue was the Park Service issued what the court referred to as no fishing orders. And it said that those orders were a display of legal force where immediate compliance was expected. And the court said that those orders were markedly different from a complaint with which immediate compliance is not expected. The parties who receive complaints are under no order requiring them to act. Exactly so here. The commission filed a complaint. It made allegations. And the court decided what it decided. But it was not the commission's complaint that determined any rights and obligations. As for Athlone, Your Honor, I think the district court actually did a pretty good job of explaining why that case does not control here. Number one, it seems to, as Judge Williams-Layer said in the tight court title decision, at odds with the Supreme Court's decision in FTC versus Standard Oil. Because the Athlone decision does not address whether or not simply having to go through an administrative proceeding is a denial of a right or an imposition of a burden. The court in SoCal, of course, said that it was not. I would also add that Athlone arose in the context of an administrative proceeding. That case, it was sort of in the pre-Axon world where there were always these questions about when you're in administrative proceedings, at what point can a party pop out of the administrative proceedings and get reviewed by a court? Of course, that is not an issue here because the commission itself went to court and asked for judicial review of these issues. So, you actually think Athlone was wrongly decided, but even if it was, you would distinguish it as involving an administrative action? I would, Your Honor. But the theory behind the court in Athlone was that the court was declaring its jurisdiction to do something. And that's kind of what's going on here. I'd say it was slightly different. What was at issue in Athlone was the agency was asserting its jurisdiction to both run the proceedings and at the end of it, potentially impose penalties. Of course, in an enforcement action in district court, it is not the agency that is asserting jurisdiction to govern proceedings or to issue a penalty. Those are all decisions for the court to make. And of course, those court decisions have legal consequences, but they are not final agency action. When an agency does engage in final agency action, of course, an aggrieved party can seek review of that action within a certain time frame defined by Congress. The Supreme Court and this court have said that specific and discreet final actions are subject to APA review. And there were moments here when broker-dealers could have sought that sort of review when the commission promulgated Rule 17a8, when the Treasury Department promulgated the SARS regulations, when the commission amended Rule 17a8 in 2011. But neither Scottsdale nor any other broker-dealer sought that review. Rule 17a8 became final and effective. The commission filed a complaint to enforce the rule against Alpine and properly raised arguments were addressed in that action. Scottsdale's argument seems to boil down to this idea that, you know, if we think that the commission should have engaged in additional rulemaking before it filed an enforcement action, you essentially just dispense with the requirement under the APA that a plaintiff identify final agency action. But that's just not how it works. And I think a potentially helpful decision for your honors to take a look at is the Third Circuit's recent decision in Coinbase versus SEC, which is at 126 F. 4th 175, and particularly at page 191. That's a decision from this year. And it arose in a slightly different context, but there was the same sort of flavor of the commission can't choose to litigate case by case, it has to engage in rulemaking. And the Third Circuit said, that's not true. And one of its reasons was, assuming for argument's sake, the SEC has tried to make regulatory changes, and some or all of its enforcement actions, the appropriate way for a party to raise a fair notice argument would be as a defense in those enforcement actions. That's the way it works. We adopt a rule. At that point, there's a limited period of time at which people can raise challenges. When that time passes, and the commission proceeds to seek judicial review over the contours of that rule, any party against whom the commission seeks an enforcement action can raise appropriate defenses, exactly as Alpine did in the Alpine action, exactly as Scottsdale could do if we filed an enforcement action against Scottsdale. Unless your honors have questions, you'd ask that you affirm. Thank you, counsel. I would like you to respond to the standing issue, and it does seem like there's going to be the possibility or the likelihood of increased cost to Scottsdale because of this now new world order that 17A is going to be enforced. Why isn't that enough of an injury in this situation, assuming for purposes of discussion, final agency action? Yeah, I think exactly for the reason the district court said, which is that to the extent that Scottsdale faces increased compliance costs, that's because the commission won in the Alpine case, and there is now an SDNY decision and a Second Circuit decision that says that rule 17A applies to broker-dealers and they have to comply. It's not the result of the complaint that the commission filed in that action. Is there any remedy under the APA for that sort of thing? For what they're saying, could we require the agency, could we require, I guess it would have to be, well, let me put this one. For there to be any remedy, you need to have some remedy before you have standing, and the remedy here would seem to be our reversing the Second Circuit. Is there any remedy that could be permitted under the APA? Can we issue a declaratory judgment under the APA for a remedy's provision? I don't think there is a remedy that Your Honors could, and Your Honor brings up an excellent point about redressability, because of course the remedy for agency action that is unlawful under the APA, that's Section 706, would be to set aside agency action that's unlawful. Of course, that highlights the exact problem here. As Your Honor highlighted earlier, this court cannot set aside a complaint that was filed in a different court, and of course it can't set aside the decisions of that court, so there is an enormous redressability problem here. Well, could we issue, could we declare the law? Is one of the remedies permitted, declaratory judgment? It's to declare unlawful and set aside agency action, but again, that just highlights what- Can it simply declare it unlawful and not set it aside? We can't set aside the complaint. Can we declare the complaint unlawful? I would say no, Your Honor. Section 706 says declare unlawful and set aside agency action, found to be arbitrary, capricious, all of the- So if you declared unlawful, you have to set it aside as you read the APA? I think so, Your Honor. Is there any case law on that? Do you know? I'm off the top of my head. I'm not aware. If you run into some, we wouldn't mind a 20HA letter? Absolutely, Your Honor. I'm not sure if it's going to be dispositive, but I'm sorry, Judge Kelley. At one point, you're going to realize it's not worth listening to me, but I'll try to talk into the mic better. Okay, so no more questions? I have no questions. Okay, thank you. Thank you, counsel. Thank you, Your Honor. Okay. No, no, you had- Well, respond to what? The redressability issue? Please ask a question about remedies. I was wondering- If you have any case law on whether we can order something unlawful, declare something unlawful, but not set it aside? Do you have something on that point? Because if you do, you can do it through a 20HA letter. Okay. No, the remedy we're seeking is a declaration that they fail to comply with the APA. Well, she's indicated she doesn't think that's allowable in an APA review. That's not redressable. If you have something to say on that, you can do that in 20HA. All right. Well, again, thank you, counsel. Case is submitted. Counselor excused.